IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. SARAH ELLEN EATHERLY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3731     J. Randall Wyatt, Jr., Judge**

_____

**No. M2009-01543-CCA-R3-CD - Filed July 14, 2010**

_____

The Defendant, Sarah Ellen Eatherly, pled guilty to vehicular assault and reckless aggravated assault. Following a sentencing hearing, the trial court denied the Defendant's request for judicial diversion and sentenced her to an effective sentence of two years, with seven days to be served in confinement and the remainder to be served on probation. The Defendant appeals, contending the trial court erred when it denied her request for judicial diversion. After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which DAVID H. WELLES, and THOMAS T. WOODALL, JJ., joined.

Emma Rae Tennant and Jonathan F. Wing, Nashville, Tennessee, for the Appellant, Sarah Ellen Eatherly.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Rebecca Schwartz, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a traffic accident that occurred on April 13, 2008. As a result of that accident, the Defendant was charged with vehicular assault, reckless aggravated

assault, and driving on a suspended license. At the plea submission hearing, during which the Defendant pled guilty to vehicular assault and reckless aggravated assault, the State summarized the evidence underlying the Defendant's guilty pleas as follows:

> Your Honor, if this case had gone to trial, the state would produce witnesses who I would expect to testify that on April 13th, 2008 at approximately 12:50 a.m., Officer Kenny responded to a personal injury accident on I-40 West. The owner and operator of a 2003 Mazda, [the Defendant], was on [a] Metro Fire Department backboard when Officer Kenny arrived.
>
> . . . .
>
> [The Defendant] stated she did not know what happened. However, the operator of the 2004 Jeep, Jennifer Press[e]r stated that she was rear[-]ended by [the Defendant] and then lost control of her vehicle. Evidence at the scene indicated that the vehicle being operated by[the Defendant] did rear[-]end Press[e]r's vehicle. As a result of the injury – as a result of the accident, Ms. Press[e]r suffered multiple contusions and abrasions.
>
> Lisa Beachum, a passenger in Ms. Press[e]r's vehicle, sustained a severed tendon among other injuries as a result of the accident and was transported to Summit Hospital. Officer Kenny noted the obvious odor and effects of an alcoholic intoxicant on [the Defendant] whose eyes were watery and the pupils were dilated. She was crying and her mood was very changeable.
>
> [The Defendant] admitted to drinking vodka, a blood sample was collected at General Hospital. The blood sample was analyzed at the TBI Crime Laboratory, and the results showed that she had .22 blood alcohol content.

Based upon these facts, the trial court accepted the Defendant's pleas of guilty to vehicular assault and reckless aggravated assault. The trial court held a sentencing hearing wherein the following evidence was presented: the trial court first noted the Defendant's convictions were both Class D felonies and carried potential sentences of two to four years. The parties agreed that the Defendant was going to receive no more than six years of probation, either as a result of judicial diversion or standard probation, and that she would not serve more than thirty days in jail. The defense attorney told the trial court that the defense's main objective was to request judicial diversion. The State offered the presentence

report as an exhibit.

The victim, Jennifer Presser, testified she and her friend Lisa Beacham were returning from a concert in Knoxville on April 13, 2008, when she noticed a car approaching her vehicle at a rapid rate of speed. Presser said she assumed the vehicle was a police officer because it was gaining on her so quickly, so she checked her speedometer and ensured she was obeying the speed limit. Presser recalled she was in the lane to the right of the fast lane, so she assumed that the approaching driver would pass her in the left-most lane. She looked again in her rear view mirror and realized that the car was not going to pass her. She tried to get over to the right, but, when the car rear-ended her car, she went off the road and lost control of her car, which rolled between two and four times. Presser said she raised her hands over her head when the car rolled, which saved her life. As a result of the accident, Presser suffered severe lower back pain for more than seven months, for which she underwent physical therapy. She said she still experienced back pain when standing or sitting for long periods of time. Presser said she had difficulty driving at night, especially on the weekends. She said she also became extremely tense when she saw the headlights of another car approaching her.

Presser identified copies of print-outs she made from the Defendant's MySpace page. She indicated that, after this incident, the Defendant made a comment on MySpace that she was "laying by the pool getting fucked up" and that she was "getting faded at the pool because everyone [wa]s working on her day off, morons." Presser understood the term "faded" to mean drinking alcohol or getting "high" on drugs. Presser said these comments gave her the impression that the Defendant did not care about what she had done to Presser and Presser's friend. Further, it showed that the Defendant had not changed her drinking habits after the accident, which concerned Presser. Presser also identified pictures from the Defendant's MySpace, taken before the accident, that showed the Defendant taking shots with her friend.

Presser asked the trial court to deny the Defendant judicial diversion. She said the wreck left her with back pain the rest of her life and left her passenger with permanent scars. She also said she experiences painful flashbacks of this incident. She felt the Defendant should not be able to have her record expunged, especially because she made the irresponsible decision to get drunk and then drive. The victim said she felt lucky to be alive after this accident and felt the Defendant should take responsibility for her decision. She also asked that the Defendant serve some jail time because, as the comments on the MySpace page indicated, the Defendant had not yet learned her lesson.

On cross-examination, Presser agreed she had previously testified that she did not suffer physical injuries from the accident, but she explained that she was not seeking

-3-

treatment for her back at that time. Further, she acknowledged that she might not have told hospital staff that she was experiencing back pain. Presser agreed that she had filed a civil lawsuit against the Defendant.

Lisa Beachum testified that she was in the car with Presser when they returned from the concert in Knoxville. She remembered Presser saying, "[O]h, my God, this car is coming up on us so fast." She then heard a big "bang" before the car skidded on the road and started to flip. Beachum remembered hearing the crunching of metal, the breaking of glass, and the sensation of cool air. She said she could smell mud from the car and could feel grass. She explained that her arm went through the sunroof at one point. Beachum said she was afraid to look at Presser because she thought Presser would not be alive. Beachum exited the vehicle and told Presser to do the same. Another car pulled over and called 911.

Beachum said she was from Louisiana and had traveled from Baton Rouge for the Defendant's sentencing hearing. She explained she was the owner of the car Presser was driving when the Defendant rear-ended them. Beachum described her injuries, saying that she received three gashes to her forearm that had to be stapled shut and three lacerations to her left forearm that resulted in the severing of five tendons, which had to be surgically repaired. Beachum described the recovery from her surgery as "painful." She had to wear a cast from right below her elbow to the tips of her fingers for at least three weeks. The cast caused her difficulty in many ways, primarily in school. She was in the last semester of college to receive her bachelor's degree in nursing and had to type her papers with one hand. She had difficultly taking her final exams. Further, she suffered back pain from both the wreck and not being able to use her arm.

Beachum said she missed 504 hours of work, from April 14th to July 7th, as a nurse in labor and delivery because she could not use both of her hands. Further, she did not have complete use of her hand. Beachum said she still suffers pain when she tries to push or pull something like stretchers, which is a requirement of her employment. She said even squeezing a toothpaste tube causes her pain. She said she did not have full strength or full sensation in her arm. Beachum said that, after the gashes on her right arm had healed, doctors found a piece of glass in her arm, which required an additional surgery to extract. Beachum underwent physical therapy twice a week for four weeks to help her back pain. Beachum testified that, as a result of this accident, she was nervous, anxious, and hypersensitive when driving.

Beachum also asked the trial court to deny the Defendant's request for judicial diversion. She said she had to live with her scars and her memory of the wreck forever, and the Defendant should also have to live with the consequences of this accident forever. Beachum said the Defendant's MySpace page showed she was not remorseful. Further, she

-4-

said the fact that the Defendant drove with a blood alcohol level of .22 was irresponsible, especially because the Defendant's license was already suspended.

On cross-examination, Beachum testified she received $61,000 as a result of a civil lawsuit against the Defendant.

Cheryl Eatherly testified the Defendant is her oldest child and was almost twenty-five at the time of the sentencing hearing. Eatherly said she and her husband, the Defendant's father, raised two children, the Defendant and her younger brother. Eatherly recounted that the Defendant's father passed away ten months before this accident. Eatherly said the Defendant was "extremely remorseful" about the accident. Eatherly described this as "aberrant bevavio[]r" on the Defendant's behalf. While in high school, the Defendant had scored in the 99th percentile on her ACT and was in college at the time of the accident. Eatherly said the Defendant had never been in trouble in her life and was "brilliant."

Eatherly described the Defendant as a "Daddy's girl" and said that, shortly after her father's death, the Defendant dropped out of school. She eventually returned, and had completed all of her academic courses to be a registered nurse. The Defendant's father had been a nurse prior to his "long and difficult illness," which ultimately led to his death in 2007.

Eatherly said the Defendant realized the importance of what had happened to her. Her mother said it was a "rare incident" for her to consume so much alcohol. She said that since this accident the Defendant now refused to drink even a glass of wine with dinner. Eatherly said the Defendant had not driven and had lost fifty pounds since the accident. She said that the Defendant suffered from panic attacks and that she discontinued school after learning she faced felony charges because she understood she could not practice nursing if convicted of a felony.

Eatherly said, despite what appeared on her daughter's MySpace page, her daughter did not have a problem with alcohol. The Defendant had always gone to school and worked, and she helped to care for her dying father. Eatherly believed the Defendant could successfully complete probation.

On cross-examination, Eatherly testified the Defendant had worked as a waitress since quitting nursing school. Currently, the Defendant was living with her boyfriend. Eatherly said she was not aware that the Defendant's license was suspended at the time of this accident. Eatherly said she thought it was rare for the Defendant to drink heavily and rare for her to drink hard liquor. Eatherly looked at the MySpace pictures and suggested the Defendant was holding the bottle of liquor to her mouth for the picture but not drinking it.

The State asked Eatherly to read aloud the following comments the Defendant made on her MySpace page:

Okay. I have court on Tuesday and I'm so excited to[o], hah, yeah, fucking right – I don't know. I am not going to be able to smoke for like four years. And I can't drive for a year, not to mention leave the state and that's if things go good. It sucks. Anyway. Amanda is back to do. Now, you need to come and – come the fuck on so we can all. Call me. Love you. Call me. I'm fucked up. And there's a number. Love you, and her number. Oh, geese, last night. That's somebody else. That's not Sarah at all.

Um-you say drugs is bad. Awesome, high, yeah. I don't have a car. And with a [twelve pack] it's pretty fucking easy to make friends at the pool. Loves it. Definitely call me over the weekend and we can have more drunk talk. So we – or so I gust tried to call you. I'm getting faded at the pool by myself, because everyone is down here on my day off. Ha's – call me. I can't wait for you to come here. I'm fixing to get a three-bedroom house and there's a room with your name on it.

Eatherly conceded that it sounded like the Defendant was referring to marijuana when she said she would be unable to smoke for four years. She said she knew the Defendant had smoked marijuana on occasion.

Matthew Bennett Kelly, the Defendant's boyfriend since August 2008, testified that he owned his own business providing industrial and commercial weed control. The Defendant said he purchased a house on February 26, 2009, and the Defendant lived with him in his home. He described the Defendant as "extremely helpful" to him in his business, explaining she does the paperwork for his company. Kelly said the Defendant did not drive and only left the house with him or her mother. He said he knew she never drank to excess because he would have to be the one to go buy the alcohol, and he did not do so because the couple could not afford that. Kelly acknowledged he and the Defendant drank occasionally, but never to excess. He added that he did not know the Defendant at the time of this incident. Kelly testified that, despite the MySpace comments, the Defendant was taking this whole situation very seriously.

The Defendant testified that she caused the accident in this case because of her "own poor decision-making at the time." She said she felt terrible and suffered anxiety as a result of this accident. The Defendant said she suffered from generalized anxiety disorder and a panic disorder, both of which had gotten worse since the accident. She discussed her educational history, including the interruption in her education her father's terminal illness

-6-

caused.

The Defendant described the events leading to the accident. She said she was at her apartment when her ex-boyfriend, a high school friend, and this high school friend's boyfriend came to her apartment. The high school friend brought a bottle of vodka and several juices, and they began drinking. The Defendant said she planned to stay at her apartment but her "judgment got impaired." She said she did not normally drink vodka like that. She did not know how intoxicated she was, saying she was "coherent." She said she walked down three flights of stairs before getting into her vehicle. The Defendant recalled she was on the phone when she rear-ended the victims. The Defendant described her behavior driving that night as "out of character."

The Defendant acknowledged the comments she made on her MySpace page. She said her comments were made to a friend she had never met who lived in California. The Defendant said she was trying to look "cool" when she made the comments. The Defendant said she did not think the victims would see the photographs of her taking a shot and that the photographs were taken jokingly. She understood that, in light of these events, the pictures were not funny and said she would never take photographs like these again. The Defendant said these pictures were taken before the accident but she never attempted to remove them from her MySpace page after the accident. The Defendant expressed her willingness to comply with any terms of probation imposed upon her. She asked the court for judicial diversion so that she would still be eligible to pursue a career in nursing.

On cross-examination, the Defendant testified that she had generalized anxiety disorder and panic disorder before the accident but said she was not on regular medication because she did not have insurance at that time. The Defendant said drinking made her anxiety worse. The Defendant said that, on the night of the accident, she had gotten in her car to drive to the store to get more juice to mix with the vodka. The Defendant said she had a panic attack immedietly after the accident, so she only remembered "bits and pieces." She conceded the report said she was combative with police officers, but she explained that she was having an anxiety attack and no one believed her. The Defendant agreed she had to be restrained at the hospital but explained it was in response to her ex-boyfriend's attempt to enter her hospital room. She denied urinating on herself as was stated in the police report.

Based upon this evidence, the trial court found:

I was impressed with the two young women Jennifer Presser and Lisa Beachum who testified here through no fault of theirs while driving along I-40, this young woman here, [the Defendant] suddenly going near a hundred miles an hour, some unbelievable speed runs into the back of them and drives them

-7-

down off the road. And but for the grace of God, they wouldn't be up here testifying. They would be deceased.

I also heard from the defendant and I heard from her mother. I was impressed with her mother that this is her first offense and so forth and so on. I understand all of that. And I understand that the defendant has gone through some things, too, and the father passed away ten months before this incident. So I'm understanding and hearing both sides of this, but taking it all in consideration, the court is of the opinion considering the law what the request is, I've already said that at some point that she's going to be put on probation. But to summarize it she pled guilty to one count of vehicular assault and one count of reckless aggravated assault. They're both Class D Felonies and it's agreed that they carry a sentence between two and four years. The court didn't hear other than the offense itself, which is serious enough, anything to enhance the sentence above the two years. And so the sentences are going to be two years. And these sentences are going to run concurrently.

Now, with regard to the period of incarceration, which I left undecided before, I've thought about this all. And really I was listening to you, I'm glad you're here, Ms. Schwartz, when she was here and her rationale was and reasoning was about that was that if this was a DUI, that she would serve at least – at least forty-eight hours on a DUI, first offense. And since was registered .22, . . . over .20, it would be at least a seven day sentence to serve. This isn't a DUI. This is a, as I've said a vehicular assault and reckless aggravated assault. But if you think about the case and the fact that a DUI is a lesser included offense of this case, my reasoning would say that you would at least have in this case as much as you have in a DUI since this was a lesser included offense of DUI would be.

So with regard to the period of incarceration, the state agreed and Ms. Schwartz agreed that it would be no more than thirty days. And the Court has decided after thinking about this and realizing she's a first offender and all these good folks are here, especially her mother and boyfriend and whoever else is here, that she should serve at least seven days, consecutive days as a part of this accident, which it was an accident, but it wasn't an accident. It was a criminal act when she's driving on I-40 a hundred miles an hour at .22 or .20, whichever it was. So I think she's going to have to serve seven days as a minimum period of incarceration. I do also think that this is a case that if was a DUI, it wouldn't be [eligible for judicial diversion pursuant to] 40-35-313. And since DUI's are lesser included offense of this, I don't see [how this]

-8-

would be 40-35-313.

So the Court's of the opinion with regard to [the] issue of 40-35-313, that this offense involved alcohol, .22 and luckily the two young women weren't killed. If they were she'd be sitting here facing a vehicular homicide case, not . . . a vehicular assault case. And so using the DUI statute as an analogy the court finds that this action is not going to be one that the court thinks is expungable under 40-35-313. She's going a hundred miles an hour, runs into the back of another car. She's severely intoxicated, .22. And that's surely more serious than a simple DUI, first offense. So a DUI first offense doesn't carry something that's expungable, and it requires a minimum forty-eight hours, I think this case at least [de]serves that much if not more.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied her judicial diversion because there is no substantial evidence in the record to support the trial court's ruling. Further, she asserts the trial court did not specifically address the relevant criteria set forth in the case law of this state.

Where a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2006). Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. T.C.A. § 40-35-313(a)(1)(A). To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> > (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
> >
> > (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
> >
> > (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). The trial court found that the Defendant was eligible for

judicial diversion based on these requirements. However, eligibility does not entitle the Defendant to judicial diversion. *State v. Bonestal*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities in pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Additionally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Id.* (citing *Bonestal*, 871 S.W.2d at 168).

The Defendant contends that the trial court erred when it did not support its denial of judicial diversion with specific explanations. When a Defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *Cutshaw*, 967 S.W.2d at 344. We must conclude that "no substantial evidence exists to support the ruling of the trial court" if we are to grant the Defendant relief. *Id.*

The trial court considered the evidence presented at the sentencing hearing and noted that it was impressed with the testimony from the victims and the Defendant's mother. The trial court noted that the Defendant had suffered some difficult circumstances in her life. The trial court then considered the circumstances of the offense, namely that the Defendant was intoxicated at the time of the accident and that her blood alcohol level was .22, well more than the legal limit. The trial court noted that the Defendant was driving at an extremely fast rate of speed, almost 100 miles an hour, when the accident occurred. The trial court expressed relief that neither of the two victims had been killed. The trial court also considered the ends of justice when denying judicial diversion. It noted that DUI is a lesser-included offense of the charged offense and that, by statute, DUI is not an expungeable

-10-

offense.  Based upon these factors, the trial court denied judicial diversion.

Substantial evidence supports the findings upon which the trial court based its denial of judicial diversion.  Considering the circumstances of the offense, the Defendant's behavior since the arrest, and the ends of justice, we conclude that the trial court did not abuse its discretion when it denied the Defendant judicial diversion.  Further, it is clear from the record that the trial court considered the relevant factors and gave substantial consideration to its reasoned judgment.  The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE